AKSANA M. COONE (SBN 190125)
aksana@coonelaw.com
**LAW OFFICES OF AKSANA M. COONE**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9650
Fax: (310) 954-9008

GLENN J. HOLZBERG
(FL Bar No.: 369551)
glenn@holzberglegal.com
**HOLZBERG LEGAL**
7685 SW 104th Street, Suite 220
Miami, Florida 33156
Phone: (305) 668-6410
Fax: (305) 667-6161

*Pro Hac Vice to be Filed*

JOHN B. PATTERSON
(FL Bar No.: 023930)
john@balkanpatterson.com
ADAM M. BALKAN
(FL Bar No.: 0044880)
adam@balkanpatterson.com
**BALKAN & PATTERSON, LLP**
1877 S. Federal Highway, Suite 100
Boca Raton, FL 33432
Phone: (561) 750-9191
Fax: (561) 750-1574

*Pro Hac Vice to be Filed*

Attorneys of Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA MCARDLE, individually, and as the Personal Representative of the Estate of THOMAS MCARDLE, deceased,<br><br>    Plaintiffs,<br><br>    vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>    Defendant. | Case No.:  2:21-cv-1522<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL**<br><br><br><br><br>Complaint filed: February 18, 2021<br>District Judge:<br>Magistrate Judge: |

1

COME NOW, Plaintiffs, Anna McArdle, Individually and as Personal Representative of the Estate of Thomas McArdle, deceased, and file this Complaint against Defendant, Princess Cruise Lines LTD (hereinafter, "Princess" or "Defendant"), and would respectfully show the Court as follows:

## I.   **PARTIES**

1.      Plaintiff, Anna McArdle, Individually and as Personal Representative of the Estate of Thomas McArdle, is a resident of Boca Raton, Florida in Palm Beach County, Florida, and was a passenger onboard the Grand Princess. At the time of the incident, Thomas McCardle was a resident of Reno, Nevada in Washoe County, Nevada. Anna McArdle, who is the surviving spouse of Thomas McCardle, has been or will be appointed the Personal Representative of the Estate of Thomas McArdle.

2.      Princess Cruise Lines Ltd. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.  The action is being filed in this Court pursuant to the terms and conditions of the Passenger Contract issued by Defendant, Princess Cruise Lines, Ltd. Princess Cruise Lines Ltd. may be served via its registered agent, CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

## II.   **JURISDICTION AND VENUE**

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 for the reason that there is complete diversity of citizenship between Plaintiff and Princess, and Plaintiff seeks damages in excess of $1,000,000.00 (One Million Dollars) exclusive of interest, costs, and attorney's fees, which greatly exceeds the minimum amount in controversy required by § 1332.

4.      This Court also has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime tort.

5.      The Court has general personal jurisdiction over Princess as Princess' principal place of business is in Los Angeles County, California, and as

1  such Princess is "at home" in California for purposes of any exercise of personal
2  jurisdiction. In addition, Princess conducts substantial business within the state
3  of California, including operating cruises from ports in San Francisco, San
4  Diego, and Los Angeles. Princess markets cruise vacations to California
5  residents and employs thousands of California residents to work at its California
6  headquarters. It was foreseeable at all times that Princess could be hauled into
7  court in the State of California for conduct that caused injuries; in fact, Princess'
8  Passenger Contract requires claimants like Plaintiffs in this action, to bring suit
9  to vindicate personal injury claims in the United States District Court for the
10 Central District of California. At all times hereto, Princess owned and operated
11 the cruise ship the Grand Princess.

12      6.      Thomas McArdle and Anna McArdle were passengers aboard the
13 Grand Princess which departed out of San Francisco on February 21, 2020 and
14 was anchored off the coast of San Francisco, as the vessel was unable to dock at
15 the Port Of San Francisco, as originally scheduled from March 4-9, 2020 as a
16 result of an outbreak of COVID-19.

17 **III.   FACTUAL BACKGROUND**

18      7.      All facts set forth are based upon knowledge, information, and
19 belief.

20      8.      In the months preceding the filing of this Complaint, there was a
21 worldwide outbreak of a new strain of the Coronavirus. This new strain is
22 commonly known as COVID-19. The virus began in China in December 2019,
23 or earlier, and quickly spread throughout Asia and Europe. More recently, it
24 spread throughout North America, initially on the West Coast of the United
25 States. The virus causes fatigue, fever, loss of appetite, loss of smell, loss of
26 taste, body aches and pain and a dry cough. Coronavirus can be fatal, especially
27 in people over sixty years of age, and those with co-morbidity factors. As of the
28 date of this filing, there are over 93 million cases worldwide, over approximately

24 million cases in the United States, and almost 400,000 deaths in the United States as result of COVID-19. The fatalities are largely amongst the elderly population and others with underlying medical issues and co-morbidities.

9.      COVID-19 gained increased public attention when the Diamond Princess cruise ship (also owned and operated by Defendant) suffered an outbreak of the disease in early February 2020 in Yokohama, Japan. The outbreak began with ten cases and rapidly multiplied to 700 cases as a result of the flawed two-week quarantine onboard the ship. The Center for Disease Control (the "CDC") issued a statement on February 18, 2020 that said, "the rate of new reports of positives new on board [the Diamond Princess], especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk." At least seven of Defendant's passengers died as a result of COVID-19 on the Diamond Princess cruise ship.

10.     The Grand Princess cruise ship left San Francisco on February 21, 2020 carrying 2,421 passengers and 1,113 crew members. Given, that the Defendant experienced such a traumatic outbreak on board one of its vessels less than a month prior to the February 21, 2020 voyage the Defendant should reasonably have taken all necessary precautions to keep its passengers, crew, and the general public safe, and warn them of these known and developing risks. Unfortunately, the Defendant did nothing to ensure the safety of its passengers, or to otherwise warn them of this growing crisis, including Thomas McArdle and Anna McCardle (herein the "McArdle's").

11.     Prior to boarding the Grand Princess, on February 21, 2020, Thomas McArdle was residing in Reno, Nevada. The McArdle's were married in Reno, Nevada on May 10, 1997. The McArdle's had recently decided to move to Boca Raton, Florida where, prior to boarding the Grand Princess, on February 21, 2020, Anna McArdle was residing. Thomas McArdle was working for Milne Towing Services in Nevada where he had been employed in Lien Sales since

June of 1997. Prior to that, Thomas McArdle was a Police Officer in Woburn, Massachusetts. Anna McArdle had recently retired, in June of 2019, from the Atlantis Casino Resort Spa, where she worked in Hotel Convention Sales.

12.     Prior to Thomas McArdle and Anna McCardle boarding the Grand Princess, the Defendant knew that at least two passengers from the prior voyage on the Grand Princess on February 21, 2020 had symptoms of COVID-19.

13.     Thomas McArdle and Anna McCardle were not notified about these prior to boarding and were also unaware that there were 62 passengers on board the February 21, 2020 cruise who were presumably exposed to passengers and crew with COVID-19 and remained on board after the conclusion of the prior voyage. It is common practice for Defendant, and other major cruise lines to accept bookings from passengers on back to back voyages, or of longer duration, to extend their vacation experiences. Defendant was aware that 62 passengers were continuing their voyage after the prior COVID-19 outbreak. Likewise, Defendant is aware that crew members remain on the ship for many consecutive voyages, for the duration of their contracts, who were similarly exposed to the prior cruise COVID-19 outbreak.  Those 62 carry-over passengers and many of the, more than 1100, crew members were exposed to the passengers and crew members that were infected with COVID-19.

14.     Despite exposing 62 carry-over passengers and the entire crew to COVID-19, Princess without warning, foreseeably forced the new passengers together in numerous public venues on the Grand Princess with the exposed passengers and crew.

15.     On Wednesday, February 26, 2020, the Grand Princess docked in Nawiliwili Kauai, Hawaii, on Thursday, February 27, 2020, the Grand Princess docked in Honoloulu- Oahu, Hawaii, on Friday, February 28, 2020, the Grand Princess docked in Lahaina-Maui, Hawaii, and on Saturday, February 29, 2020, the Grand Princess docked in Hilo, Hawaii. The McArdle's, along with other

passengers from the Grand Princess waited in crowded lines getting on and off the ship. The McArdle's were forced to take a chartered bus, provided by the Grand Princess to and from the ship. During these chartered bus rides, the McArdle's mingled only with passengers of the Grand Princess.

16.   For the period before Thomas McArdle developed full symptoms of COVID-19, he was only in extremely close proximity with passengers and crew and exposed to COVID-19 while the Grand Princess was docked in Hawaii.

17.   Thomas McArdle contracted COVID-19 on the Grand Princess while it was docked in Hawaii within three nautical miles from the coast of the United States. The Grand Princess was not on the high seas more than three nautical miles from the United States when Thomas McArdle contracted COVID-19.

18.   According to the CDC, the median time between exposure and the onset of symptoms is four to five days. Thomas McArdle began developing symptoms of COVID-19 a little more than five days after arriving in Hawaii. Specifically, Thomas McArdle's symptoms began with flu-like symptoms and muscle weakness.

19.   On March 3, 2020, the protocols onboard the Grand Princess changed including cessation of buffet style food service at the Main Buffet, which was no longer self-service.

20.   On March 4, 2020, at while eating dinner in the Main Dining Room, during Formal Night, the McArdle's noticed their Assistant Waiter, Rachelle, was not at dinner. The McArdle's were told that their Assistant Waiter was sick. The McArdle's Head Waiter seemed quite concerned for the well-being of his colleague but would not elaborate regarding the Assistant Waiter's medical condition.

21.   On March 5, 2020, the Grand Princess had been scheduled to make Port in Ensenada, Mexico, but due to COVID-19 was denied entry to Mexico.

Onboard, starting at approximately 2 pm, the passengers on board the Grand Princess were required to quarantine in their respective cabins for the remainder of the voyage.

22.    On March 7, 2020, the Grand Princess was scheduled to return to San Francisco for the conclusion of the voyage; however, due to COVID-19, the passengers were not permitted to disembark, and the ship remained at anchor of the California coast, but within 3 nautical miles of the coastline.

23.    On March 8, 2020, Anna McArdle began experiencing flu-like symptoms and called the Medical Center onboard the Grand Princess for medical assistance. She was provided medication for her symptoms.

24.    On March 9, 2020, some passengers were permitted to disembark the vessel into mandatory quarantine in different locations around the United States.

25.    On March 11, 2020, the McArdle's were disembarked the vessel. At the port, the McArdle's were placed on a charter bus, despite both of Thomas and Anna's symptoms, with other passengers from the vessel. The charter bus took the McArdle's to Oakland Airport and placed a charter flight to Dobbins Air Force Base in Georgia.

26.    Thereafter, Thomas McArdle's symptoms continued to worsen.  He was given limited medical treatment. On March 14, 2020, while undergoing a temperature check he suddenly became dizzy and unresponsive. Thomas McArdle was taken by ambulance from Dobbins Air Force Base and admitted to Wellstar Kennestone Hospital in Marietta, Georgia. He had a high fever upon admittance and was diagnosed with acute viral pneumonia.

27.    On March 30, 2020, Thomas McArdle died from complications caused by COVID-19. He was treated for respiratory failure- as he was hypoxic, septic, and suffered Central Nervous System and cardiac failure.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Count 1**
**NEGLIGENCE**
**(Estate of Thomas McArdle)**

Plaintiff re-alleges all allegations in paragraphs 1 through 27 above as if alleged fully herein.

28.     California wrongful death law requires Anna McArdle to plead negligence, allege the death of her husband was caused by Defendant's negligence, and allege she sustained damages as a result. Defendant owed Thomas McCardle, a paying passenger who boarded the ***Grand Princess*** on February 21, 2020, the duty of reasonable care under the circumstances to ensure that he would not be exposed to unreasonable risk of harm, and to warn Plaintiff and decedent of risks of harm that Defendant either knew or reasonably should have known, before leaving its home port and allowing over 3000 passengers, including the McCardle's to sail into impending and foreseeable doom.

29.     Defendant breached its duty. It had knowledge that at least two of its passengers from the prior voyage who disembarked the Grand Princess early on February 21, 2020 had symptoms of COVID-19. Despite that, Defendant made the reckless and conscious decision to continue sailing the next voyage, the subject voyage, of the Grand Princess, which began later on February 21, 2020 with another 3,534 passengers and crew on an infected ship.

30.     Defendant was aware of at least two passengers who disembarked its ship (and likely many continuing crew members) on February 21, 2020 in San Francisco, had symptoms of COVID-19. It went as far as to send emails on Wednesday, February 25, 2020 to passengers who disembarked the Grand Princess on February 21, 2020 notifying them of the potential of exposure to COVID-19 while on the cruise, all the while completely and carelessly failing to warn and inform current passengers of the same information!

31.     Furthermore, there were 62 passengers who, by prior arrangement and paid for bookings, remained on board the cruise after the conclusion of the

COMPLAINT; DEMAND FOR JURY TRIAL                    Case No.: 2:21-cv-1522

prior voyage. Those 62 carry-over passengers were exposed to the passengers (and likely to many crew members) that were confirmed to be infected; some of the infected passengers to whom the carry-over passengers were exposed later died from coronavirus.

32.     In continuing to sail with another 3,534 passengers and crew (including Anna and Thomas McArdle), on the cruise that began on February 21, 2020, knowing that some of those passengers and crew had already been exposed to COVID-19, Defendant exposed the McArdle's to actual risk of imminent physical injury, and potential death.

33.     Defendant failed to have proper screening protocols for COVID-19 prior to boarding the passengers on the February 21, 2020 voyage. Despite the knowledge and experience it had with the outbreak of the disease on the Diamond Princess just a mere three weeks prior to the subject cruise, Defendant failed to have a proper screening protocol in place to minimize the risk of exposure of the disease to its passengers and crew.

34.     Prior to boarding the February 21, 2020 sailing on the Grand Princess, passengers were simply asked to fill out a form confirming they were not sick. No passenger was questioned or examined in any capacity. None of the 62 passengers or any crew members, from the prior sailing, who were mixing and mingling with the infected prior passengers were ever examined during the subject voyage until being tested for the virus on Thursday, March 5, 2020, two weeks after the subject voyage.

35.     Defendant failed to adequately warn Thomas McArdle about the potential exposure to COVID-19 prior to boarding the ship on February 21, 2020, and again during the sailing of said cruise. Defendant had actual knowledge of at least two passengers who sailed on its ship the week prior, disembarked with symptoms of coronavirus, and one confirmed death as a result. Defendant also knew that there were 62 passengers and crew who were onboard

that same cruise, who later boarded the Grand Princess with Thomas McArdle, and failed to inform Thomas McArdle at any time prior to boarding or while he was already onboard, that there was an actual risk of exposure to COVID-19.

36.     Defendant failed to inform Thomas McArdle that a crew member aboard the subject cruise disembarked in Hawaii with symptoms and as a result of COVID-19. If Thomas McArdle had been given the knowledge the Defendant had of this risk of exposure prior to boarding, he would have never boarded the ship, or at least made a voluntary and conscious decision to board. Thomas and Anna McArdle were never given the opportunity to decide whether to expose themselves to the risk of this deadly disease. If he was informed of the risk on February 25, 2020, when the former passengers were notified by email, Thomas McArdle would have disembarked at the first port of call in Honolulu on February 26, 2020. Due to Princess' outright negligence and reckless disregard of the rights and safety of and by failing to warn Thomas McArdle of the actual risk of exposure to COVID-19 aboard its infected ship, Anna and Thomas McArdle were subjected to repeated exposure to COVID-19 stricken individuals and required to quarantine in their cabin along with the rest of the passengers and crew, off the coast of San Francisco, agonizingly awaiting their fate.

37.     Defendant is negligent in exposing Thomas McArdle to COVID-19 in Hawaii by placing him in extremely close proximity to passengers and crew exposed to COVID-19. Despite Defendant's clear knowledge of the circumstances described herein, Princess failed to warn Thomas McArdle of potential exposure before Anna and Thomas McArdle disembarked in Hawaii.

38.     Defendant, at all times throughout the month of February 2020 was gathering and reviewing information about the extent of COVID-19 on its ships beginning with the Diamond Princess in Yokohama, Japan, and in close proximity to the outbreak of COVID-19 in Wuhan and other parts of China, and Japan.  Fleetwide operational control is managed from by Defendant's shoreside

headquarters located in Los Angeles County, California. All decisions relevant to the sailings of the Diamond Princess, Grand Princess, and Ruby Princess including the subject sailing were made by corporate officers and decision makers in Los Angeles County, California.

39.    The negligent actions of Defendant, leading to the death of decedent, Thomas McCardle, and the illness and losses of Plaintiff, Anna McCardle, originated and occurred on land in the corporate and shoreside headquarters of the defendant, in Los Angeles California, located in the Central District of California

40.    As a result of Defendant's failed actions and corporate shoreside mismanagement of the COVID-19 outbreak on board the Grand Princess Thomas McArdle died. Anna McArdle seeks wrongful death damages including her own separate damages for loss of society, loss of consortium, pecuniary loss, and mental anguish as a result of the death of her husband under California wrongful death law. Anna McArdle seeks damages for Thomas McArdle's conscious pain and suffering and pain and mental anguish from the time of the occurrence to his death as a result of the facts alleged herein.

WHEREFORE the Plaintiff, Anna McCardle, on behalf of the Estate of Thomas McArdle, demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**Count 2**
**NEGLIGENCE**
**(Anna McArdle)**

Plaintiff re-alleges all allegations set out in paragraphs 1 through 27 above as if alleged fully herein.

41.    It was the duty of Defendant to provide Plaintiff and decedent with reasonable care under the circumstances.

42.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff, Anna McArdle, with reasonable care under the

circumstances.

43.     Plaintiff, Anna McArdle, was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a.     Failure to use reasonable care to provide and maintain a safe voyage for passengers, including the Plaintiff and decedent, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the coronavirus, and care; and/or

b.     Failure to adequately warn passengers, including the Plaintiff and decedent, before boarding the vessel that passengers on a prior cruise showed symptoms of COVID-19; and/or

c.     Failure to warn passengers, including the Plaintiff and decedent, of the dangers and risks of COVID-19 and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d.     Failure to adequately warn passengers, including the Plaintiff and decedent, before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle an outbreak onboard the Grand Princess; and/or

e.     Failure to adequately warn passengers, including the Plaintiff and decedent, on the subject voyage aboard the Grand Princess that passengers and crew on a prior voyage showed symptoms of COVID-19 tested positive for the virus before boarding the vessel; and/or

f.     Failure to adequately warn passengers, including the Plaintiff and

decedent, on the subject voyage aboard the Grand Princess that 62 passengers who were on the prior voyage were exposed to those both passengers and crew who either showed symptoms of COVID-19 and/or who tested positive for the virus before the new passengers boarded the vessel; and/or

g.   Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

h.   Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

i.   Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

j.   Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

k.   Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

l.   Failure to adequately quarantine passengers infected with COVID-19, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m.   Failure to adequately quarantine passengers and/or crewmembers infected with COVID-19, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

n.   Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

o.   Failure to serve uncontaminated food; and/or

p.   Failing to practice safe and sanitary food practices; and/or

q.   Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the Grand Princess; and/or

r.   Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

s.   Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

t.   Failure to take adequate medical precautions when crew members were exhibiting symptoms of COVID-19 and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

u.   Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

v.   Failure to perform testing on ill crew members to confirm the type and nature of the virus; and/or

w.   Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of COVID-19 and/or virus and/or infectious disease; and/or

x.   Failure to provide a sanitary vessel to prevent outbreaks of COVID-19 and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

y.   Failure to take adequate steps to contain the spread of COVID-19 and/or virus and/or infectious diseases, which it knew or should

have known could cause other dangerous medical conditions; and/or

z.    Knowingly failing to warn passengers and then refusing to cancel and/or offer refunds to passengers, including the Plaintiff and decedent, as a result of passengers on a prior cruise showing symptoms of COVID-19; and/or

aa.   Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious COVID-19 due to passengers on a prior cruise showing symptoms of coronavirus; and/or

bb.   Failing to cancel the voyage and/or offer refunds despite knowing at least a passenger on a prior voyage showed symptoms of COVID-19 and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

cc.   Failing to cancel the voyage and/or offer refunds despite knowing some crew members on a prior voyage showed symptoms of COVID-19 and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

dd.   Failure to reasonably offer refunds to passengers, including the Plaintiff and decedent, not wishing to travel on a vessel that had passengers from a previous voyage showing symptoms of the coronavirus; and/or

ee.   Exposing passengers, including the Plaintiff and decedent, to unsanitary conditions that they were unprepared for without proper warning from Defendant; and/or

ff.   Failure to provide adequate training, instruction, and supervision to the Defendant employees; and/or

gg.   Failure to promulgate and/or enforce adequate policies and

procedures to ensure that safety would not be compromised for cost and/or profits; and/or

hh.     Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers, including the Plaintiff and decedent, during an outbreak of a virus and/or infectious disease, including, but not limited to, COVID-19; and/or

ii.     Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet of other passengers and crew, in common areas of the vessel; and/or

jj.     Knowing, as a result of previous similar incidents and/or passengers showing symptoms of COVID-19, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

kk.     Failure to amend its cancellation policy to allow the passengers, including the Plaintiff and decedent, to cancel their cruise without financial penalty in light of passengers from a previous voyage showing symptoms of the coronavirus and/or the significant actual risk due to the coronavirus global pandemic;

ll.     Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

44.     The above acts and/or omissions caused and/or contributed to Plaintiff and decedent contracting COVID-19 while aboard the ***Grand Princess***, exposing them to medical complications arising from it and possible death,

because the Plaintiff and decedent would not have boarded the vessel knowing that passengers on the prior voyage showed symptoms of COVID-19 that Defendant were aware of, which the Defendant failed to adequately warn and/or communicated the foregoing to Plaintiff and decedent.

45.     In addition, the above acts and/or omissions which caused and/or contributed to Plaintiff and decedent contracting COVID-19 while aboard the Grand Princess, exposing them to medical complications arising from it and possible death, the Plaintiff and decedent would have disembarked the vessel in Hawaii knowing that passengers on the subject voyage were showing symptoms of COVID-19had Defendant adequately warned and/or communicated the foregoing to passengers, including the Plaintiff and decedent.

46.     The above acts and/or omissions caused and/or contributed to the Plaintiff and decedent contracting COVID-19 while aboard the Grand Princess, exposing them to medical complications arising from it and possible death, because the outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

47.     At all material times, Defendant had exclusive custody and control of the vessel, Grand Princess.

48.     Defendant knew of the foregoing conditions causing passengers, including the Plaintiff and decedent, to contract COVID-19 while aboard the Grand Princess, and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

49.     As a result of the negligence of Defendant, Plaintiff, Anna McArdle, was:

a.     exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the

fear of contracting and actually contracting COVID-19 while aboard the ***Grand Princess***, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.     contracted COVID-19 while aboard the ***Grand Princess***, suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff, Anna McArdle, will suffer the losses and impairments in the future; and/or

c.     feared for her life as well as the life of her spouse, as a result of contracting COVID-19 aboard the ***Grand Princess***.

WHEREFORE the Plaintiff ANNA MCARDLE demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT 3
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT

Plaintiff, Anna McCardle, re-alleges all allegations set out in paragraphs 1

through 27 above as if alleged fully herein.

50.     At all times material, due to the negligence of the Defendant, Plaintiff, Anna McCardle, was placed in an immediate risk of physical harm and contracted COVID-19 while aboard the Grand Princess.

51.     Defendant's negligence caused severe mental and/or emotional harm and/or distress in the Plaintiff, Anna McCardle, such as fear and anxiety as a result of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

52.     Plaintiff, Anna McCardle and decedent, were forced to remain on a vessel that had multiple passengers that tested positive of COVID-19 and were on the vessel for multiple days and were then forced to disembark the vessel in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to and actually contracting COVID-19, causing a reasonable fear of great bodily harm and death. At all times material, the Plaintiff, Anna McCardle, and decedent were in the zone of danger at risk of serious bodily harm, including death due to, inter alia, the highly contagious coronavirus, which had no vaccine.

53.     Plaintiff, Anna McCardle and decedent, were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the COVID-19 that was known to be on board the vessel via passengers, and crew members, on a prior voyage that tested positive for COVID-19. Plaintiff and decedent were in close proximity to conditions which did cause or could have caused serious physical, mental, emotional injury and/or illness.

54.     Plaintiff, Anna McCardle's fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiff, Anna McCardle, suffered mental or emotional harm (such as fright and anxiety)

that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiff, Anna McCardle, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

55.     As a result of the negligent inflection of emotional distress by Defendant, Plaintiff, Anna McCardle, was:

a.     exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of contracting and actually contracting COVID-19 while aboard the Grand Princess, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.     contracted COVID-19 while aboard the Grand Princess, suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired as well as, ultimately the death of  the decedent and her husband, Thomas McArdle. The injuries and damages are permanent or continuing in nature, and Plaintiff, Anna McCardle, will suffer the losses and impairments in

the future; and/or

c.      feared for her own lives as well as the life of her spouse, as a result of contracting COVID-19 aboard the ***Grand Princess***.

WHEREFORE the Plaintiff, Anna McCardle, demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

<u>**Count 4**</u>
**GROSS NEGLIGENCE**

Plaintiff re-alleges all allegations set out in paragraphs 1 through 27 above as if alleged fully herein.

56.      Defendant's conduct in deciding to continue to sail the ***Grand Princess*** knowing that the ship was infected from two previous passengers who came down with symptoms of COVID-19 and had 62 passengers on board who were previously exposed to those two infected individuals, along with the majority of the 1100 crew members, shows a lack of any care on the part of Defendant, amounting to gross negligence. Defendant knew how dangerous it was to expose Anna McArdle and Thomas McArdle, and the rest of its passengers and crew, to COVID-19 in light of its experience with the Diamond Princess a short three weeks prior, and yet it departed from what a reasonably careful and prudent cruise line would do under the circumstances in continuing to sail with Anna McArdle and Thomas McArdle.

57.      Defendant's conduct in failing to warn Anna McArdle and Thomas McArdle of their actual risk of harm in being exposed to COVID-19, either prior to boarding or while they were already on board, in light of the prior passenger who came down with symptoms and later died, along with others, passenger and crew,  who came down with symptoms from that prior voyage, and the crew member who disembarked during this voyage due to COVID-19, amounts to an extreme departure of a what a reasonably careful and prudent cruise line would

do, in light of that fact that Anna McArdle and Thomas McArdle are in the age group most susceptible to death and debilitating consequences from COVID-19.

58.     The conduct of Defendant, as alleged above, is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, should be regarded as atrocious and utterly intolerable in a civilized community. Put simply, Defendant recklessly and intentionally put passengers and crew members through a living nightmare, so it could protect its bottom line.

59.     Defendant chose to place profits over the safety of its passengers, crew, and the general public in continuing to operate business as usual, despite their knowledge of the actual risk of injury to Anna McArdle and Thomas McArdle, who are in the age group most susceptible to death and debilitating consequences from COVID-19.

## INJURIES AND DAMAGES

60.     Anna McArdle is a wrongful death beneficiary and seeks all available damages recoverable by law resulting from the death of Thomas McArdle. Anna McArdle sustained, and continues to sustain, damages, among other things, for loss of society, companionship, pecuniary loss, loss of inheritance, loss of consortium, and mental anguish as a result of the death of Thomas McArdle.

61.     Anna McArdle has been or will be appointed the Personal Representative of the Estate of Thomas McArdle.

62.     Anna McArdle seeks damages for Thomas McArdle's conscious pain and suffering and pain and mental anguish from the time of the occurrence to his death as a result of the facts alleged herein.

63.     Plaintiffs are seeking all damages allowed by law in an amount greater than one million dollars ($1,000,000)

/ / /

/ / /

# PRAYER

WHEREFORE, Plaintiffs pray Defendant, Princess, be cited to appear and answer herein, and that upon final trial, Plaintiffs recover of Princess both actual and exemplary damages, as set forth above, and costs of court, pre-judgment and post-judgment interest, and expenses, and such other and further relief to which Plaintiff may show herself justly entitled.


DATED: February 19, 2021                **LAW OFFICES OF**
                                        **AKSANA M. COONE**

                                        BY: *s/ Aksana M. Coone*
                                        Aksana M. Coone, Esq.
                                        Attorneys for Plaintiff,
                                        *Attorney for Plaintiffs*

                                        **HOLZBERG LEGAL**
                                        **BALKAN & PATTERSON, LLP**

                                        BY: *s/ Glenn J. Holzberg*
                                        GLENN J. HOLZBERG
                                        (*Pro Hac Vice to be Filed*)
                                        *Attorney for Plaintiffs*

                                        BY: *s/ John B. Patterson*
                                        JOHN B. PATTERSON
                                        (*Pro Hac Vice to be Filed*)
                                        *Attorney for Plaintiffs*

                                        BY:  *s/ Adam Balkan*
                                        JOHN B. PATTERSON
                                        (*Pro Hac Vice to be Filed*)
                                        *Attorney for Plaintiffs*

COMPLAINT; DEMAND FOR JURY TRIAL            Case No.: 2:21-cv-1522

1

## JURY DEMAND

2

3        Plaintiffs formally make this demand and application for a jury trial in this

4   lawsuit.

DATED: February 19, 2021            **LAW OFFICES OF**

5                                           **AKSANA M. COONE**

6                                           BY: *s/ Aksana M. Coone*

7                                             Aksana M. Coone, Esq.
                                            Attorneys for Plaintiff,

8                                           *Attorney for Plaintiffs*

9                                           **HOLZBERG LEGAL**

10                                          **BALKAN & PATTERSON, LLP**

11                                          BY: *s/ Glenn J. Holzberg*

12                                          GLENN J. HOLZBERG
                                            (*Pro Hac Vice to be Filed*)

13                                          *Attorney for Plaintiffs*

14

15                                          BY: *s/ John B. Patterson*

                                            JOHN B. PATTERSON
16                                          (*Pro Hac Vice to be Filed*)

17                                          *Attorney for Plaintiffs*

18                                          BY:  *s/ Adam Balkan*

19                                          JOHN B. PATTERSON
                                            (*Pro Hac Vice to be Filed*)

20                                          *Attorney for Plaintiffs*

21

22

23

24

25

26

27

28